UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

GARY FRANCIS MAROHNIC,

    Plaintiff,                              Case No. 2:17-cv-122

v.                                              HON. TIMOTHY P. GREELEY

COMMISSIONER OF SOCIAL SECURITY,

    Defendants.
_____/

## OPINION

In January 2014, plaintiff Gary Francis Marohnic filed an application for disability and disability insurance benefits due to back pain, numbness in the left hand, shoulder pain, and knee and ankle problems. (PageID.147). Plaintiff alleges that he became disabled after September 13, 2014. (PageID.165). Plaintiff's application was denied initially and Plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ). (PageID.405). ALJ Beth J. Contorer, held a hearing on February 26, 2016. (PageID.63). After the hearing, the ALJ found that plaintiff was capable of performing past relevant work as a roofer and therefore concluded that plaintiff was not under a "disability" under the Social Security Act. (20 C.F.R. § 404.1520(g)). (PageID.56-57). The ALJ's decision became the agency's final decision when the Appeals Council denied plaintiff's request for review. Plaintiff then filed this action seeking judicial review of the agency's final decision denying his request for disability benefits.[1]

---

[1]Both parties consented to proceed before a Magistrate Judge on October 2, 2017.

Plaintiff testified at the hearing that he was five foot nine inches tall and weighed about two hundred and fifty pounds. (ECF No. 8-2, PageID.68). Plaintiff has a driver's license and a twelfth-grade education. *Id*. Plaintiff lives with his son, in a house owned by his son. Plaintiff used his IRA for the down-payment on his son's house. Plaintiff's son sails nine-months out of the year and during that time plaintiff lives alone. Plaintiff can prepare meals and grocery shop. (PageID.69-70). He cuts the grass using a riding mower. Plaintiff worked as a roofer until December of 2013 and collected unemployment benefits through July of 2014. (PageID.71). Plaintiff stopped working after finishing the season due to the pain he was experiencing. (PageID.72). As a roofer, plaintiff collected unemployment benefits each winter while he was not working.

Plaintiff had knee surgery in 2014. Plaintiff could no longer return to work due to lower back and shoulder pain. Plaintiff could not afford physical therapy and stopped going after one session. (PageID.73). Plaintiff was provided with stretching exercises to perform on his own, but he did not do them. Plaintiff takes blood pressure medication and Aleve for pain. Plaintiff's shoulder pain improved since he stopped working. (PageID.80). Plaintiff drinks a twelve pack of beer twice a week, down from what he was drinking previously, and he smokes a pack of cigarettes every four days, down from a half a pack every day.

Plaintiff drives his dogs to an open field and lets them run around and walks around a little bit. (PageID.80). Plaintiff can walk a block and stand for a few hours. (PageID.82). Plaintiff has some issues with his left hand where he drops things, and arthritis in his right hand. (PageID.83). The ALJ asked if plaintiff could kneel, bend, or squat. Plaintiff stated that he probably could not squat because it would be hard to get back up. (PageID.83-84).

The vocational expert (VE) testified at the hearing that plaintiff's past relevant work as a roofer was medium and skilled work. (PageID.84). A person the same age and with a similar educational level as plaintiff could perform work as a roofer with the restrictions of occasionally climbing ladders, ropes and scaffolds, and frequently stooping, twisting, reaching, and crouching. (PageID.84-85). The VE additionally testified that if such a person could only occasionally stoop, twist, and crouch and was limited to frequent handling with the non-dominant hand, they would not be able to perform work as a roofer. Under these limitations, the person would be able to work as a packer or order picker. (PageID.85-86). The VE further testified that if an individual with these limitations were further limited to light work, the person would be able to perform jobs as a bench assembler, sorter, or inspector. (PageID.86). However, an individual with past relevant experience as a roofer with the same limitations, would have no transferable skills for light work. (PageID.55).

"[R]eview of the ALJ's decision is limited to whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Winslow v. Comm'r of Soc. Sec.*, 566 Fed. App'x 418, 420 (6th Cir. 2014) (quoting *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009)); *see also* 42 U.S.C. § 405(g). The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Health & Human Servs.*, 945 F.2d 1365, 1369 (6th Cir. 1991). This Court is not permitted to try the case *de novo*, nor resolve conflicts in the evidence and cannot decide questions of credibility. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989); *see Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (noting the ALJ's decision cannot be

overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion). This Court is required to examine the administrative record as a whole and affirm the Commissioner's decision if it is supported by substantial evidence, even if this Court would have decided the matter differently. *See Kinsella v. Schwikers*, 708 F.2d 1058, 1059 (6th Cir. 1983); *see also Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (holding that the court must affirm a Commissioner even if substantial evidence would support the opposite conclusion).

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R. § 404.1520(a). At step one, the ALJ determines whether the claimant can still perform substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). At step two, the ALJ determines whether the claimant's impairments are considered "severe." 20 C.F.R. § 404.1520(a)(4)(ii). At step three, the ALJ determines whether the claimant's impairments meet or equal a listing in 20 C.F.R. part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). At step four, the ALJ determines whether the claimant has the residual functional capacity ("RFC") to still perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, after considering the claimant's residual functional capacity, age, education, and work experience, the ALJ determines whether a significant number of other jobs exist in the national economy that the claimant can perform. 20 C.F.R. § 404.1520(a)(4)(v).

Plaintiff argues that the ALJ committed two errors:

1. The ALJ's RFC determination is not supported by substantial evidence because it is not supported by any medical opinion.

> 2. The ALJ's rejection of plaintiff's allegations is not supported by substantial evidence.

Plaintiff argues that the ALJ erred because the RFC is not supported by medical opinion evidence. The ALJ concluded that plaintiff could perform medium work, despite consultative medical examiner Dr. Carlson's opinion that plaintiff should be limited to modified light work. Plaintiff argues that it was error for the ALJ to reject Dr. Carlson's light work restriction. The ALJ concluded that plaintiff had the RFC to perform medium work as defined in 20 C.F.R. § 404.1567(c), with the limitations that he can occasionally climb ladders, ropes, and scaffolds; and can frequently reach, crouch, stoop, and twist. (ECF No. 8-2, PageID.55). The ALJ based her RFC finding on the testimony and medical evidence which included Dr. Carlson's medical assessment and opinion. The ALJ did not reject Dr. Carlson's opinion, but gave it partial weight "consistent with my assessment of the claimant's work capacity." (ECF No. 8-2, PageID.57).

Dr. Carlson conducted plaintiff's Social Security Disability Evaluation on June 4, 2015. (ECF No. 8-7, PageID.285-290). At that time, plaintiff told Dr. Carlson that he injured his back two years prior when he slipped and fell on a roof while working. A 2012 MRI scan showed that plaintiff had degenerative disc disease. Plaintiff received no treatment, medications, injections, or surgery. Plaintiff indicated that his back was feeling better and rated his pain as a 2 out of 10. In 2005, plaintiff injured his left hand when he suffered a deep laceration throwing heavy roofing rolls onto a skid. Plaintiff experiences some left hand numbness as a result. After surgery, plaintiff experienced numbness in the ulnar aspect of his left hand. Plaintiff returned to work without restriction but describes the pain as a 5 out of 10, with some weakness, and sensitivity to cold. Plaintiff has a history of pain in both shoulders after falling a number of times. At that time, he reported that he never was examined by a physician and did not receive any treatment for

shoulder pain. He also described pain in his left knee but was never specifically treated for knee problems. Dr. Carlson reported that plaintiff was laid-off in December, lives alone, showers and dresses himself, and routinely performs light activities with the heaviest lifting involving 10-15 pounds.

Dr. Carlson determined that plaintiff's current abilities were unrestricted and his upper and lower extremities were normal. (PageID.287). Plaintiff has no difficulties walking (PageID.288) and has normal range of motion in all of his joints. (PageID.2890290). Upon examination, plaintiff showed hand strength in each hand of 20-40 pounds and is right hand dominant. Dr. Carlson explained that plaintiff has normal range of motion, except he has pain in his shoulders. Plaintiff's orthopedic examination was normal. He could pick an object off the floor and squat down and stand back up. Dr. Carlson assessed plaintiff with chronic back and joint pain, hypertension, and right common iliac aneurysm. Dr. Carlson recommended that plaintiff "appears to [be] functioning at a modified light duty capacity. This would be defined as lifting 10-20 pounds on an occasional (less than one-third of an eight hour work day) basis. He should avoid extensive ladders and extensive bending and twisting." (PageID.286).

The ALJ assigned partial weight to Dr. Carlson's opinions stating that:

> The medical observations and opinions of the consultative expert are given partial weight where they are consistent with my assessment of the claimant's work capacity. This expert has knowledge of the Social Security disability program, and extensive experience performing independent objective evaluations of Social Security Disability claims. However, the evidence supports no further degree of limitation or capacity.

(PageID.57). The ALJ concluded that plaintiff has severe impairments of arthroscopic right knee repair, mild degenerative disc disease, and obesity. The ALJ found that plaintiff has full range of motion in his right ankle and that he could walk without assistive devices. (PageID.52). Plaintiff

6

complained of shoulder pain and discontinued physical therapy treatment due to the high cost of the deductible. Plaintiff complained of shoulder pain in 2014, but did not complain again until February 5, 2016, when he asked for a disability assessment. At that time, plaintiff also complained of chronic back and knee pain. The ALJ stated that "[i]t is noteworthy that the adopted residual functional capacity includes a limitation regarding reaching, even though I find any shoulder problems to be non-severe." (PageID.53).

The ALJ further found that plaintiff's complaints of left hand numbness were non-severe, because the injury occurred in 2005. The injury was repaired, and plaintiff continued to work without restrictions as a roofer, which involved tearing off and applying new roofing materials, until he was laid-off in 2013. In addition, the ALJ noted that the medical records show left hand improvement after surgery and, during his 2014 physical examination, plaintiff exhibited full range of motion and gripping strength of at least up to 40 pounds.

The ALJ explained plaintiff's current medical conditions:

> In terms of the claimant's knee, there was evidence of a torn meniscus in November 2014 (8F:81). The claimant underwent arthroscopy, partial meniscectomy, and limited chondroplasty of the patella (8F:19). Afterwards, he was able to walk without assistive devices. However, he testified it was sometimes painful for him to bend at the knee (i.e. climb and crouch). This evidence supports the above specified lower extremity limitations.
>
> In terms of the claimant's back, the claimant reported progressively worsening pain while doing medium level work for years. He reportedly fell in August 2012. Afterwards, the claimant complained of worsening pain in his lower back that radiated into his left leg. However, upon physical examination, the claimant's spine was not tender. He had full range of motion and his reflexes were normal. The claimant's straight leg-raising test was normal indicating no evidence of spinal cord or nerve root involvement between the claimant's back and lower extremities (5F:7). Studies of his lumbar spine revealed no more than mild degenerative changes without spinal cord or nerve root compromise (4F:5).

7

> The claimant underwent a physical examination at the request of the State Disability Determination Service in June 2014. In terms of his back, the claimant said his back felt better and he was not being treated for it. Upon physical examination, the claimant had full painless motion of the lumbar spine. His motor strength, balance, coordination, and reflexes were normal in the claimant's lower extremities. The claimant was observed walking normally without assistive devices (6F). The claimant testified he still had pain in his back that limited his ability to lift, sit, stand, walk, and bend. This evidence supports the above-specified physical capacity.
>
> Evidence shows that the claimant has treated with his primary care physician, Dr. Kamerschen, since at least 2014. Although he presented to Dr. Kamerschen on two occasions in late 2014 through 2015, the notes do not indicate any musculoskeletal complaints. Specifically, in November, 2014, the claimant met with Dr. Kamerschen to discuss his cholesteral and fasting blood sugar lab results (9F:9). In October, 2015, the claimant presented to Dr. Kamerschen with swelling of his right pinky, and was treated for cellulitis (9F:12). In fact, as previously noted, the claimant did not appear again with musculoskeletal complaints until the month of his hearing, February, 2016, at which time he asked Dr. Kamerschen to complete disability paperwork, and Dr. Kamerschen refused, referring him to his orthopedist, Dr. Boes (9F:16). There is no opinion or recent treatment records from Dr. Boes.

(PageID.56).

In determining a person's RFC, an ALJ should assess the person's "ability to do sustained work-related physical and mental activities in a work setting" for eight hours a day, five days a week, or an equivalent work schedule. SSR 96-8p. An impairment is severe for purposes of an RFC determination when it is a "'medically determinable' physical or mental impairment or a combination of impairments that significantly limit(s) an individual's physical or mental ability to perform basic work activities." *White v. Colvin*, No. 14-cv-12870, 2015 WL 5210243, at *6 (E.D. Mich. Sept. 3, 2015) (citing 20 C.F.R. §§ 416.920(a)(4)(ii) and 416.920(c)). The regulations state that basic work activities include:

> 1) physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handline; 2) capacities for

> seeing, hearing, and speaking; 3) understanding, carrying out, and remembering simple instructions; 4) use of judgment; 5) responding appropriately to supervision, co-workers, and usual work situations; and 6) dealing with changes in a routine work setting.

*White*, 2015 WL 5210243, at *6 (citing 20 C.F.R. § 416.921(b)). Notably, an RFC is not the least a person can do, but the most a person can do despite his limitations or restrictions. SSR 96-8p. Plaintiff bears the burden of providing the medical evidence showing the severity of her conditions. *Id.* (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

In making an RFC finding, "[i]t is well established that the ALJ may not substitute his medical judgment for that of the claimant's physicians." *Brown v. Comm'r of Soc. Sec.*, No. 1:14-cv-236, 2015 WL 1431521, *7 (W.D. Mich. Mar. 27, 2015) (citing *Meece v. Barnhart*, 192 Fed. App'x 456, 465 (6th Cir. 2006)); *see Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 194 (6th Cir. 2009) (quoting *Rohan v. Charter*, 98 F.3d 966, 970 (7th Cir. 1996) ("ALJs must not succumb to the temptation to play doctor and make their own independent medical findings."). However, the ALJ is not required to base his or her RFC findings entirely on a physician's opinion. *See Rudd v. Comm'r of Soc. Sec.*, 531 Fed. App'x 719, 728 (6th Cir. 2013) (quoting SSR-96-5p) ("[T]o require the ALJ to base her RFC finding on a physician's opinion, 'would, in effect, confer upon the treating source the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled.'"); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x 149, 157 (6th Cir. 2009) ("[A]n ALJ does not improperly assume the role of a medical expert by assessing the medical and non-medical evidence before rendering a residual functional capacity finding."). Ultimately, the ALJ may base her RFC finding on *all* relevant evidence on record, including an individual's medical history, reports of daily activity, and recorded observations, for example. SSR 96-8p, 1996 WL 374184, at *5. The "ALJ is charged with the

responsibility of determining the RFC based on her evaluation of the medical and nonmedical evidence." *Rudd*, 531 Fed. App'x at 728.

Plaintiff takes issue with the ALJ's determination that he is capable of medium work when Dr. Carlson indicated that plaintiff appeared to be functioning at the "modified light duty" level. The regulations define light work as lifting no more than 20 pounds at a time with frequent lifting of up to 10 pounds. 20 C.F.R. § 404.1567(b). Medium work is described as lifting no more than 50 pounds at a time with frequent lifting or carrying of objects up to 25 pounds. 20 C.F.R. § 404.1567(c). Plaintiff complained of back pain after a slip and fall. An MRI dated August 7, 2012, revealed degenerative lumbar findings and an aneurysmal finding about the proximal right common iliac artery. (PageID.271, 279). On April 10, 2014, plaintiff visited Dr. Matthew A. Butler, M.D. (PageID.292). Dr. Butler reported that he was not clear why plaintiff returned for a follow-up visit or what his main complaint was "now nearly 8 years" following his ulnar artery and nerve injury that required repair. Plaintiff complained of more pain but was vague in description. Dr. Butler found no obvious change since the last evaluation in 2006. (PageID.293). Dr. Butler found no "deterioration in function" and "certainly did not recommend other further treatment." *Id*.

On November 10, 2014, plaintiff had arthroscopic surgery to repair his right knee meniscus tear. (PageID.313). Plaintiff was examined for shoulder pain on July 14, 2014. (PageID.375). Plaintiff complained that he experienced the pain for several months after a couple of falls on ice. Plaintiff complained of weak grip strength and pain with lifting his left hand. Plaintiff was diagnosed with decreased range of motion with decreased strength and increased pain. Plaintiff was provided with a home exercise program to increase range of motion and strength. (PageID.377). Plaintiff was examined by Dr. Anthony V. Kamerschen on July 11, 2014.

(PageID.384). Plaintiff complained of shoulder pain from working as a roofer for over 30 years. Plaintiff exhibited decreased range of motion in his shoulders. (PageID.384-385). Dr. Kamerschen believed that Plaintiff had rotator cuff tendinitis in both sides and recommended physical therapy with Ibuprofen as needed. (PageID.386). On September 4, 2014, Dr. Kamerschen reported that plaintiff could not afford physical therapy and that he has not been doing home exercises. (PageID.388). Plaintiff complained that his right knee gave out on occasion and that he was experiencing right knee pain. Plaintiff was given an orthopedic referral. (PageID.389). Plaintiff saw Dr. Kamerschen on October 15, 2015, for complaints of his hand swelling. (PageID.394). Dr. Kamerschen diagnosed cellulitis and prescribed Augmentin to speed the healing process. (PageID.395). Plaintiff complained of chronic back and knee pain on February 5, 2016. (PageID.398). Dr. Kamerschen noted that plaintiff had dropped off disability paper work for a hearing later in the month. Dr. Kamerschen stated that he discussed with plaintiff his eligibility for disability and because he had not evaluated plaintiff for over one year, he would not fill out the paper work but would refer him to his orthopedic surgeon, Dr. Boes, for his assessment of plaintiff's disability. (PageID.389).

The ALJ fully explained the rationale for giving Dr. Carlson's opinion partial weight. Dr. Carlson failed to explain why it appeared that plaintiff was functioning at a modified light exertional level. Specifically, the record which does not support any limitations below the medium exertional level. The medical record provides substantial evidence to support the ALJ's RFC determination.

Plaintiff asserts that the ALJ failed to properly consider his complaints of pain. When an ALJ evaluates an individual's complaints of pain and disabling symptoms, the ALJ may consider the credibility of the person. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir.

1997). "[A]n ALJ's findings based on the credibility of the applicant are to be accorded great weight and deference, particularly since an ALJ is charged with the duty of observing a witness's demeanor and credibility." *Id.* (citing *Villareal v. Sec'y of Health & Human Servs.*, 818 F.2d 461, 463 (6th Cir. 1987)). An ALJ's determination of a plaintiff's credibility must be supported by substantial evidence. *Id.*; *Winslow*, 566 Fed. App'x at 422. For example, simply stating that plaintiff has pain or other symptoms is not sufficient to establish that the individual is disabled. *Walters*, 127 F.3d at 531 (citing 20 C.F.R. § 404.1529(a)). The ALJ must assess an individual's pain by using a two prong test:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

*Id.* (referencing *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994) (quoting *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986)); *see also* 20 C.F.R. § 404.1529(a). "Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters*, 127 F.3d at 531 (citing *Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)). An ALJ can also consider an individual's ability to do household and social activities when assessing the credibility of a person's alleged pain and disabling symptoms. *Id.* at 532. Plaintiff asserts that the ALJ improperly relied on his activities of daily living when finding him not credible. It is clear that an ALJ may consider, in conjunction with the other evidence of record, a person's ability to engage in daily activities when determining whether this person is eligible for disability. *See* 20 C.F.R. § 404.1529(c)(3)(i) (noting ALJ's may consider other evidence aside from the objective medical evidence, such as activities of daily living, to determine a person's symptoms). Moreover,

an ALJ may discredit a person's testimony when it contradicts the evidence provided, which may include reports of daily living activities. *Walters*, 127 F.3d at 531-32.

Here, the ALJ noted that plaintiff's testimony pertaining to the severity of his symptoms was not credible partially because it was inconsistent with his reported activities of daily living. (PageID.56-57). Because an ALJ may consider a plaintiff's activities of daily living when making a credibility determination, plaintiff has not demonstrated that reversal or remand is appropriate on this basis. Plaintiff is able to live by himself for extended time periods, cook meals, maintain a household, such as doing laundry, grocery shopping, and mowing his lawn. Plaintiff goes for walks and drives his dogs to a local field. In addition, plaintiff has received only conservative medical treatment for his complaints of shoulder and back pain that involve stretching and physical therapy exercise and over the counter pain medication as needed. Plaintiff worked until he was laid-off and collected unemployment benefits until July 2014. These are all factors that the ALJ properly considered in determining plaintiff's credibility. Plaintiff takes issue with the fact the ALJ mentioned that he put a down payment on his son's house in discussing his assertion that he discontinued physical therapy due to the cost. Plaintiff asserts that he properly used his IRA to make the down payment and that he could not use his IRA proceeds, without tax consequences, to pay for physical therapy. There is no indication that making the down payment by using his IRA was a determinative factor in the ALJ's credibility analysis. In fact, plaintiff was provided with home exercises that he decided were unnecessary. The court must look at the totality of the evidence when determining whether substantial evidence supports the ALJ's finding. There is substantial evidence in the record that supports the Commissioner's decision that plaintiff is not disabled as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and plaintiff's request for relief is DENIED.

/s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated: September 4, 2018